CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUN 20 2011
JULIA C. DUDLEY, CLERK
BY: /s/ Paula Coleman
DEPUTY CLERK

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LEONORA RODRIGUES O'BRIEN, *Plaintiff*, v. U.S. POSTAL SERVICE, *Defendant.* | CIVIL NO. 6:10CV00054 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the court on the Defendant's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (docket no. 10). For the reasons that follow, the Defendant's motion will be granted.

I.

Plaintiff Leonora O'Brien, appearing *pro se*, has alleged that she was subject to illegal discriminatory actions taken by her employer, the United States Postal Service ("USPS"), in violation of 42 U.S.C. § 2000e-3(a). This statute forbids an employer from discriminating against an employee because she has opposed an unlawful employment practice. O'Brien alleges that the termination of her employment by the USPS was in retaliation for her filing an Equal Employment Opportunity ("EEO") complaint. This civil action filed by O'Brien is the culmination of a history of difficulties surrounding her time with the USPS in Lynchburg; a summary of those events is as follows.

Leonora O'Brien moved to Lynchburg in 2007. She had previously served as a mail carrier in California for nine years, and chose to continue her employment with the USPS after

1

arriving in Virginia. While moving into her new residence, O'Brien asked her supervisor at the post office, Milton Nappier, if she could borrow a dolly to aid her move. Nappier offered that his brother could help O'Brien with the move, and provided her with his brother's phone number. After his brother had helped O'Brien move in, Nappier suggested "several times" that she go on a dinner date with his brother. O'Brien declined the offer, as she did not wish to date anyone at the time. From that point on, O'Brien claims, Nappier began harassing her by creating a hostile work environment. He did not allow her the same opportunities as other mail carriers, subjected her to discussions without a union steward present, disparaged her work performance, and mocked her for using a GPS to find locations around Lynchburg.

This ongoing treatment prompted O'Brien to file an EEO complaint with the USPS on October 22, 2008. In response to this complaint, the USPS conducted an investigation, interviewing USPS employees at Lynchburg post offices regarding each claim put forth by O'Brien. On April 12, 2010, the USPS issued its final agency decision, finding that "the evidence does not support a finding that the actions/incidents complained of (discrete and non-discrete), either individually or collectively, rose to the level of discriminatory harassment." O'Brien timely appealed the decision to the U.S. Equal Employment Opportunity Commission, which affirmed the findings and ruling of the USPS. On November 18, 2010, approximately two months after the decision of the Equal Employment Opportunity Commission, O'Brien received a Notice of Removal, which cited improper conduct and unsatisfactory performance as reasons for her termination of employment with the USPS. O'Brien filed the instant complaint with this Court five days after her receipt of the Notice of Removal.

Although O'Brien's pleadings are not skillfully crafted, I must be solicitous of her claims because she is appearing *pro se*. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This

Court is charged with liberally construing a pleading filed by a *pro se* litigant for the development of a potentially meritorious claim. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). The Fourth Circuit has also noted that district courts "must be especially solicitous of civil rights plaintiffs." *Gordon*, 574 F.2d at 1151.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," and "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Although all reasonable inferences are drawn in favor of the plaintiff, unwarranted inferences and unreasonable conclusions do not need to be accepted as true. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009). In deciding a Rule 12(b)(6) motion, a court must view the matter in context, drawing on common sense and experience. *Iqbal*, 129 S.Ct. at 1950. A "naked assertion" lacking "further factual enhancement" is not an adequate claim for relief. *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1966).

## II.

O'Brien asserts that her termination of employment with the USPS was in retaliation for her filing an EEO complaint alleging discriminatory treatment in violation of Title VII.[1] To prevail on her retaliation claim, O'Brien must satisfy the three-step proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, (1973). *Smith v. First Union Nat. Bank*, 202 F.3d 234, 248 (4th Cir. 2000). The first requirement of this framework is that O'Brien makes out a *prima facie* case of retaliation. *Id.* It is well established in this circuit that the three elements of a *prima facie* retaliation claim under Title VII are (1) engagement in a protected activity, (2) adverse employment action, and (3) a causal link between the protected activity and the employment action. *See, e.g.*, *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998) (*abrogated by Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). After the plaintiff has made out a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse action. *Smith*, 202 F.3d at 248. The burden then returns to the plaintiff, who must demonstrate that the employer's asserted reason for the adverse action was merely pretext for a retaliatory animus. *Id.*

O'Brien satisfies that first two prongs of a *prima facie* case of discriminatory retaliation. Her filing of an EEO complaint was protected activity under Title VII, *Price*, 380 F.3d at 212, and her termination was an adverse employment action. *Dowe*, 145 F.3d at 656-57. Conversely, the third requirement of a *prima facie* claim, a causal link between the EEO complaint and her termination, is wholly lacking from O'Brien's complaint.

---

[1] In her EEO complaint, O'Brien alleged that she was subjected to discrimination and harassment on the bases of race, national origin, sex, age, and reprisal. In a thirty-nine page final agency decision, the USPS found that the evidence presented by Ms. O'Brien did not support a finding that any of the actions and incidents complained of rose to the level of discriminatory harassment. On appeal, the EEOC affirmed the agency decision, determining that O'Brien failed to make a *prima facie* case of discrimination on the basis of race, national origin, sex, age, or reprisal.

To satisfy the causality requirement of a reprisal claim, the employer must have taken the employment action because the plaintiff engaged in a protected activity. *Dowe*, 145 F.3d at 656. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Id.* "Employer" in this context refers to the particular supervisor(s) responsible for the adverse employment action. *See id.*; *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (holding that to establish a *prima facie* retaliation case, the plaintiff must prove the "decisionmaker" had knowledge of his protected activity). In this case, the relevant "decisionmakers" seem to be Ted Bell and Rebecca Clay, the two supervisors who signed O'Brien's Notice of Removal. O'Brien names both these individuals in her complaint,[2] but does not allege that either was aware she had filed an EEO complaint when they signed the Notice of Removal. In fact, O'Brien does not allege that anyone at the post office knew she had filed an EEO complaint. As this circuit has held that a supervisor's knowledge of the plaintiff's protected activity is "absolutely necessary" to establish a *prima facie* case against the employer, *Dowe*, 145 F.3d at 656, the absence of this element from O'Brien's complaint is a glaring omission.

Absent the employer's direct knowledge, temporal proximity of the protected activity and the adverse employment action is often proffered as circumstantial evidence of a causal connection between the two events. *See, e.g., Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007); *Price*, 380 F.3d at 213; *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). For example, an employer's knowledge coupled with an adverse action taken at the first opportunity can satisfy the causation requirement of a *prima facie* retaliation claim. *Price*, 380 F.3d at 213. On

---

[2] Plaintiff's complaint lists "Becky" as an individual involved in her discharge.

5

the other hand, the passage of time generally negates an inference of discrimination. *Id.* (referring to a nine to ten month lapse). *See also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (holding that a thirteen month interval between an employee filing an EEO complaint and his termination is too long a time to establish causation absent other evidence of retaliation). Although a large temporal gap between a plaintiff's protected activity and adverse employment action weakens her claim, it is not necessarily fatal. "In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri*, 478 F.3d at 650 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

In the instant case, O'Brien filed her EEO complaint with the USPS on October 22, 2008. Over two years then passed before the USPS notified O'Brien of her pending termination on November 18, 2010, much too long a time to provide any inference of a causal connection between the events. While O'Brien alleges that during the period after she filed her EEO case, her superiors "retaliated me [sic] more" by calling her into the office and not allowing her to do "what [her] position entails [her] to do," this portion of the complaint contains no factual content that can raise her contentions to the level of plausibility. *See Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. She offers no dates or parties to events constituting retaliatory treatment. Indeed, it seems the only evidence that O'Brien's termination was causally connected to the EEO complaint is the opinion of O'Brien herself. This circuit has held that "a plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a *prima facie* case of

discrimination." *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004). Accordingly, O'Brien has failed to state a claim for retaliation.[3]

## III.

For the reasons stated herein, Defendant's Motion to Dismiss will be GRANTED without prejudice in an accompanying Order.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record and to the Plaintiff.

Entered this 20th day of June, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[3] In the alternative to this motion to dismiss, the Defendant moves for summary judgment. Although not considered in this Rule 12(b)(6) review, I note that the USPS has articulated legitimate, nondiscriminatory reasons for its action, satisfying its burden according the *McDonnell Douglas* framework. *Smith*, 202 F.3d at 248. As detailed in the Notice of Removal, O'Brien failed to deliver dozens of pieces of First Class Mail, accumulated overtime without authorization, used her cell phone on the job, and failed to obey traffic laws while on her routes. (*See* Def.'s Mot. to Dismiss 2). Furthermore, that Notice of Removal references a Letter of Warning and a seven-day suspension leading up to the USPS's decision to terminate O'Brien's employment; both of these instances occurred before O'Brien filed her EEO complaint. (*Id.*, Ex. 15). O'Brien herself unwittingly supports the USPS's denial of any retaliatory animus regarding the EEO complaint. The four emails written by USPS management that she offers as evidence supporting her claim were all sent months before she filed her EEO complaint. This confirms that dissatisfaction over O'Brien's abilities as a mail carrier existed prior to – and not as a result of – her filing the EEO complaint. O'Brien does not contend that any of the USPS's reasons for her termination are pretextual.

7